| | |
|---|---|
| TYWASKA EWIN and <br> L.E., a minor, <br> by and through Tywaska Ewin, <br><br>     Plaintiffs, <br><br> v. <br><br> THE KROGER CO., <br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. _____**<br>)    **JURY DEMAND**<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs Tywaska Ewin ("Ms. Ewin") and L.E., a minor, by and through Tywaska Ewin, (collectively, "Plaintiffs" or the "Ewins"), for their Complaint against Defendant The Kroger Co. ("Defendant" or "Kroger") state as follows:

### THE PARTIES

1. Plaintiff Tywaska Ewin ("Ms. Ewin") is a resident of Davidson County, Tennessee.

2. Plaintiff L.E. is a resident of Davidson County, Tennessee. Pursuant to Federal Rule of Civil Procedure 5.2, only her first and last initials are used in this Complaint, as she is a minor.

3. Tywaska Ewin is the mother and legal guardian of L.E. and, as such, serves as the representative for L.E. in this lawsuit pursuant to Federal Rule of Civil Procedure 17(c).

4. Defendant The Kroger Co. is an Ohio corporation with its principal place of business at 1014 Vine Street, Cincinnati, Ohio 45202. Its registered agent for service of process in Tennessee is Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

1

**JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343(a) as this Complaint is brought to redress violations of 42 U.S.C. § 1981. This Court has supplemental jurisdiction over the Ewins' state law claims pursuant to 28 U.S.C. § 1367.

6. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between the Ewins and Defendant and the amount in controversy exceeds $75,000.00.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the events giving rise to this cause of action occurred in this judicial district.

**FACTS**

1. Both Ms. Ewin and L.E. are Black, African-American.

2. Defendant is engaged in the ownership, operation and management of retail grocery stores.

3. It operates in interstate commerce, having over 1,200 grocery stores across sixteen different states, including Tennessee, in which it offers various items for sale, such as packaged food, household supplies, and health and beauty products.

4. Defendant owns and operates a Kroger retail store located at 5319 Mount View Road, Antioch, Tennessee (the "Antioch Kroger").

5. The Antioch Kroger is a retail grocery store with items that can be purchased for at-home consumption.

6. On October 19, 2023, Ms. Ewin and L.E. were shopping at the Antioch Kroger together.

7. They picked up the items they needed and purchased them through the self-checkout terminal.

8. After checking out, they realized they forgot to purchase an item, so they started to return to the retail area of the store.

9. However, the cashier monitoring and working the self-checkout terminals stopped them and told them they could not take their bags of purchased items back into the store.

10. The cashier was White.

11. The cashier's tone was extremely hostile and made the Ewins feel uncomfortable.

12. Nonetheless, the Ewins complied, leaving their bags of purchased merchandise at the self-checkout area while they retrieved the forgotten item to purchase.

13. When they returned to the self-checkout area with the additional merchandise, the cashier would not let them use the self-checkout terminal.

14. Instead, the cashier insisted that the Ewins bring the merchandise to her register to purchase.

15. The cashier's body language and tone were again extremely hostile towards the Ewins and made them feel uncomfortable.

16. Ms. Ewin asked the cashier why she was not allowed to take her bags of purchased merchandise into the store.

17. The cashier responded that it was "store policy" and that "if you have a backpack, suitcase or duffle bag, you are meant to leave it up front."

18. Ms. Ewin inquired further, asking "what happens when people bring their own shopping bags into the store?"

3

19. The cashier responded that those bags are empty, which is not true, as those bags are often filled with other reusable shopping bags that will be used at the point of purchase.

20. The cashier then told Ms. Ewin, "I can't say this. You are a minority. You just can't be trusted. They make it difficult for other people."

21. L.E. was present for this entire conversation and heard the cashier's racist comments.

22. This confirmed what Ms. Ewin had suspected, that she and L.E. were being treated in a markedly hostile manner because of their race.

23. The cashier's racist comments are direct evidence of intentional discrimination.

24. This treatment is objectively unreasonable and discriminatory.

25. The treatment is contrary to the financial interests of Kroger and is far outside widely-accepted business norms, as the policy and admission created a risk that Kroger would lose business and develop a reputation for having and enforcing racist policies.

26. The treatment is arbitrary on its face, there being no reasonable justification for expressly treating some customers worse than others based solely on race.

27. Upon information and belief and based on the cashier's admission, Kroger does not treat individuals who are not African-American or minorities in this markedly hostile manner.

28. Kroger denied the Ewins the use and enjoyment of the benefits, privileges, terms and conditions that they extend to other similarly situated guests who are not African-American.

29. The cashier was an agent of Kroger and, upon information and belief, expressed a policy of Kroger.

30. The cashier had actual and apparent authority to bind Kroger and to enforce its racist policies.

4

31. The cashier's admissions regarding Kroger's racist policy are memorialized on an audio recording.

32. The Ewins were and are extremely distressed by this highly offensive racist treatment.

33. As a result of Defendant's unlawful actions, the Ewins have suffered and continue to suffer economic loss, severe mental anguish and emotional distress, humiliation, embarrassment, feelings of racial stigmatization, loss of self-esteem and self-confidence, and an increased sense of vulnerability.

34. Defendant's unlawful conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure the Ewins, and was done with conscious disregard or reckless indifference to the Ewins' civil rights.

35. Defendant's conduct was outrageous and intolerable and highly offensive to generally accepted standards of decency and morality.

36. The incident deeply affected L.E., who was only 12 years old at the time.

37. It has permanently tainted her previously positive outlook on people and has caused her to view her interactions with others with skepticism.

38. Ms. Ewin promptly complained to the store manager and to Defendant's corporate office, but nothing meaningful was done.

39. Kroger offered the Ewins $30 in store credit and promised to escalate the incident, but then apparently closed the case without further action.

40. This victimized the Ewins all over again, as the token store credit – which would not even pay for a tank of gas – and inaction confirms that Kroger condones racist behavior from its employees.

41. Though Ms. Ewin and L.E. are frequently in the area, they have not been back in the store solely because of this incident.

**CAUSES OF ACTION**

**Count I – Unlawful Discrimination in Violation of 42 U.S.C. § 1981**

42. The Ewins restate the allegations contained in the prior paragraphs as if fully re-written herein.

43. The Ewins received Defendant's services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory, in violation of 42 U.S.C. § 1981.

44. By discriminating against the Ewins on the basis of their race, Defendant denied the Ewins the same right to enjoy the benefits, privileges, terms and conditions of contract as is, and was, enjoyed by White or non-minority citizens, in violation of 42 U.S.C. § 1981.

45. As a result, the Ewins have suffered damages and significant emotional harm.

**Count II – Unlawful Discrimination in Violation of Tenn. Code Ann. § 4-21-501**

46. The Ewins restate the allegations contained in the prior paragraphs as if fully re-written herein.

47. By denying the Ewins the full and equal enjoyment of the services of a place of public accommodation, as defined by Tenn. Code Ann. § 4-21-102(15), on the basis of the Ewins' race, Defendant violated Tenn. Code Ann. § 4-21-501.

48. As a result of Defendant's unlawful discrimination, the Ewins have suffered damages and significant emotional harm.

## Count III – Intentional Infliction of Emotional Distress

49.     The Ewins restate the allegations contained in the prior paragraphs as if fully re-written herein.

50.     Defendant's conduct was outrageous and intolerable, as Defendant intended to inflict severe emotional distress upon the Ewins, or knew that severe emotional distress was substantially certain to result from the above-described conduct.

51.     As a direct result of Defendant's conduct, the Ewins have suffered severe mental injury.

## PRAYER FOR RELIEF

WHEREFORE, the Ewins pray for the following relief:

    A.  Compensatory damages in the amount of $1,000,000;

    B.  Punitive damages;

    C.  Prejudgment interest;

    D.  Reasonable attorney fees and costs;

    E.  Such other, further and general relief as this Court may deem appropriate.

## JURY DEMAND

The Ewins hereby make a demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated April 9, 2024.

Respectfully submitted,


/s/ Elizabeth G. Hart
THE SWAFFORD LAW FIRM, PLLC
Tara L. Swafford BPR # 17577
Elizabeth G. Hart, BPR # 30070
321 Billingsly Court, Suite 19
Franklin, TN 37067
Telephone: (615) 599-8406
Facsimile: (615) 807-2355
tara@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Attorneys for the Ewins*

8